FILED IN CHAMBERS
U.S.D.C. Atlanta

SEP 04 2007

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

SAMIR ABUHADBA,

        Plaintiff,

v.

ALBERTO GONZALES, Attorney
General of the United States;
MICHAEL CHERTOFF, Secretary,
Department of Homeland
Security;
ROSEMARY MELVILLE, Director,
Atlanta Office, U.S.
Citizenship and Immigration
Services; and
EMILIO T. GONZALEZ, Director,
U.S. Citizenship and
Immigration Services

        Defendants.

CIVIL ACTION No.

1:06-CV-2336-JEC

## ORDER AND OPINION

This case is presently before the Court on defendants' Motion to Dismiss or, in the alternative, to remand the matter to CIS [10]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendants' Motion to Dismiss [10] should be **DENIED**, and the motion to remand the matter to CIS [10] should be **DENIED**.

**BACKGROUND**

Plaintiff is a lawful permanent resident of the United States. (Compl. [1] at ¶ 1.) On December 8, 2003, plaintiff submitted a naturalization application to the Citizenship and Immigration Services. ("CIS"). (Id. at ¶ 6.) Shortly thereafter, as required by regulation, CIS requested an FBI background check on plaintiff. (Defs.' Mot. to Dismiss [10] at 9; Hopkins Decl. [10] at ¶ 4.)

On November 23, 2004, plaintiff interviewed with CIS officials as part of the naturalization process. (Compl. [1] at ¶ 6.) At the end of his interview, CIS informed plaintiff that his application would be recommended for approval. (Id.) CIS did not adjudicate plaintiff's application at that time, however, because plaintiff's FBI background check had not yet been completed. (Defs.' Mot. to Dismiss [10] at 10.)

On September 28, 2006, plaintiff filed this action seeking the Court to order the CIS to naturalize him or, in the alternative, to order CIS to adjudicate his application within 15 days. (Compl. [1] ¶¶ 13-14.) Upon receiving plaintiff's complaint, CIS repeated its request to the FBI for plaintiff's background check. (Id.) Indeed, the CIS requested that the FBI expedite plaintiff's background check. (Defs.' Mot. to Dismiss [10] at 10.) To date, however, CIS has not received the results of plaintiff's background check. (Id.)

Defendants have filed a motion to dismiss this action for lack

2

of subject matter jurisdiction. (*Id.*) Defendants move, in the alternative, for an order remanding the action to CIS. (*Id.* at 1.) According to defendants, dismissal or remand is appropriate because, as noted, an individual cannot be naturalized until the FBI has completed its full criminal background check. (*Id.*)

## DISCUSSION

### I. The Court Has Jurisdiction Over the Claim

Federal courts are not courts of general jurisdiction. *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). They only have the power to hear cases "authorized by Article III of the Constitution and the Statutes enacted by Congress pursuant thereto." (*Id.*) The Immigration and Naturalization Act ("INA") provides for jurisdiction over claims of undue delay in processing a naturalization application only in specified circumstances. The initial question before the Court is whether plaintiff's particular allegation has properly invoked this Court's jurisdiction under the statute.

Section 1447(b) of the INA grants jurisdiction to the district courts to hear naturalization petitions that CIS has failed to adjudicate within 120 days after an applicant's "examination" under § 1446.[1] (8 U.S.C. § 1447(b).) Thus, if the CIS has failed to

---

[1] Section 1446 sets forth detailed procedures governing an applicant's naturalization examination. 8 U.S.C. § 1446(b).

3

adjudicate the plaintiff's application within 120 days of an "examination," as that term is defined, the Court has jurisdiction. If, on the other hand, the 120-day period has not yet expired because the "examination" has not yet occurred, the Court lacks jurisdiction to consider plaintiff's claim.

Plaintiff contends that the term "examination" refers to an applicant's CIS interview. (Pl.'s Compl. [1] at ¶ 6.) Clearly, the period of time since the plaintiff's CIS interview greatly exceeds 120 days. Defendants argue, however, that "examination" refers to the entire naturalization investigation, including the FBI background check, which in this case is still pending. (Defs.'s Mot. to Dismiss [10] at 12.) Under this argument, the 120 day clock has not yet begun to tick.

All of the courts in this district that have considered the question have held that "examination," for purposes of § 1447(b), refers to a naturalization applicant's CIS interview, as opposed to the entire investigation. *See Shamsai v. Gonzales*, 1:06-cv-0882-GET (N.D. Ga. Oct. 20, 2006)(Tidwell, J.); *Khiereddine v. Melville*, 1:06-cv-1239-TCB (N.D. Ga. Jan. 4, 2007)(Batten, J.); *Al-Hawwari v. Chertoff*, 1:05-cv-1823-RLV (N.D. Ga. Jan, 9, 2006)(Vining, J.); *Elshorbagi v. Melville*, 1:05-cv-1926-GET (N.D. Ga. May 19, 2006)

AO 72A
(Rev.8/82)

(Tidwell, J.).[2]

As a linguistic matter, the above interpretation accurately captures the sense of the word "examination." Specifically, as discussed *infra*, the statute and regulations appear to make a distinction between an "investigation" of an applicant for citizenship and an "examination" of that applicant, with an investigation occurring first and an examination occurring only after the investigation is complete. Therefore, the Court will accept the above-described interpretation for purposes of concluding that it has jurisdiction to consider the claim.

A preliminary analysis of the entire statutory and regulatory framework, however, indicates that, on the merits, the CIS cannot ultimately approve an applicant's application for citizenship until the FBI has completed its background check, no matter when the CIS may have conducted its examination. Accordingly, if the CIS has jumped the gun, by completing its examination process of the applicant before the investigation by the FBI is complete, this Court

---

[2] The majority of other district courts appear to agree with this interpretation of "examination." *See Daami v. Gonzales*, 2006 WL 1457862 at *5 (D. N.J. 2006)(noting that "the majority position is that the word 'examination' in § 1447(b) refers to the date of the examination interview with a CIS officer"). In addition, the Ninth Circuit has stated that "§ 1447(b) requires the [CIS] to make a decision regarding a naturalization application within 120 days of the [CIS's] initial interview of the applicant." *United States v. Hovsepian*, 359 F.3d 1144, 1161 (9th Cir. 2004).

sees no way that an applicant can ultimately take advantage of that fact by successfully arguing that the agency is now held to the 120-day rule, merely because the agency acted more expeditiously than it should have done in conducting its examination.

Nevertheless, for purposes of determining its jurisdiction, only, the Court applies literally that part of the statute setting out the required time period that is a condition precedent for bringing suit, and it defers, until a final determination of the merits, its consideration of the rest of the statute and regulations. As noted above, § 1447(b) confers jurisdiction when the CIS fails to adjudicate a naturalization petition within 120 days of "the date on which the examination is conducted under [§ 1446]." (8 U.S.C. § 1447(b).) Section 1446 expressly distinguishes between an "investigation" and an "examination." (8 U.S.C. § 1446.) Part (a) of § 1446 describes the "investigation" process and part (b) of § 1446 describes the "examination." (*Id.*) Moreover, § 1447(b) refers to a particular date, specifically, the "*date* on which [the] examination is conducted." A naturalization investigation is a lengthy process that does not occur on a specific date, as specified in § 1447(b), but over a period of time. See *Manzoor v. Chertoff*, 472 F.Supp.2d 801, 806 (E.D. Va. 2007).

The applicable INA regulations similarly distinguish between the "examination" and the "investigation" of an applicant. See 8 C.F.R.

6

§§ 335.1 and 335.2. In addition, the regulations use the terms "interview" and "examination" interchangeably, and explicitly refer to an applicant's right to a determination within 120 days of the interview. For example, 8 C.F.R. § 312.5 provides that:

> An applicant for naturalization who fails . . . the first examination will be afforded a second opportunity to pass the test(s) within 90 days after the first examination during the pendency of the application.

Section 312.5 goes on to state that:

> Before an applicant may request a postponement of the second examination to a date that is more than 90 days after the initial examination, the applicant must agree in writing to waive the requirement . . . that the [CIS] must render a determination on the application within 120 days from the initial interview, and instead to permit the [CIS] to render a decision within 120 days from the second interview.

8 C.F.R. § 312.5

Furthermore, 8 C.F.R. § 335.2 requires that an applicant "appear in person before a [CIS] officer" for the examination. 8 C.F.R. § 335.2. An applicant is deemed to have abandoned his petition if he "fails to appear for the examination . . . and fails to notify [CIS] of the reason for non-appearance within 30 days of the scheduled examination." (8 C.F.R. § 335.6.) An applicant cannot appear in front of a CIS officer throughout the lengthy investigation process, and the reference to a "scheduled" examination further suggests a distinction between an "examination" and an "investigation."

Finally, 8 C.F.R. § 335.2 expressly requires that an FBI

7

background check be completed *before* the examination is conducted. 8 C.F.R. § 335.2 (emphasis added). It is not reasonable to interpret the term "examination" to include an FBI background check that the regulations expressly require to be completed <u>before</u> the examination can be conducted. *See Al-Hawwari*, at 10 (noting that the regulations require a background check before the examination is conducted, not, as the Government argues, before the examination can be completed) and *Daami v. Gonzales*, 2006 WL 1457862 at *4 (D. N.J. 2006) (describing the Government's interpretation of § 335.2 as "strained" and "inverted").

Of course, the CIS did not comply with § 335.2 in this case, and, but for that non-compliance, there would be no viable claim of jurisdiction under the INA by the plaintiff at this juncture. Specifically, the CIS conducted plaintiff's interview prior to receiving the results of his background check, although the regulation provides that the examination shall occur "**only after** the Service has received a definitive response from the Federal Bureau of Investigation that **a full criminal background check** of an applicant **has been completed.**"[3] (8 C.F.R. § 335.2(b) (emphasis added).)

---

[3] The Court does not know the reasoning behind the regulation's insistence that the examination occur only after the FBI background check has been completed. Perhaps, the intention was to avoid unnecessary work by the CIS on applications that would ultimately not be approved because of a problematic background check. Perhaps, understanding the delays inherent in the FBI background check

8

Indeed, the CIS must feel itself the victim of the reliable adage: "No good deed goes unpunished." Here, we face a very remarkable event: a governmental agency has actually taken the initiative to expedite a bureaucratic process by handling its part of the approval process in advance of the time when it was required, and even permitted, to do so. The plaintiff cannot disagree that, even though the CIS's examination of the applicant in advance of the FBI background check violated the regulatory order of events, it was an action that will likely benefit the plaintiff ultimately. That is, once the FBI background check is completed--and assuming that the report uncovers no problems with plaintiff's background--the plaintiff should have that much quicker a route to citizenship as the examination process has presumably been completed. Yet, for its trouble, the CIS now faces numerous lawsuits around the country filed by applicants who, like this plaintiff, received an examination before their background checks had been completed. Understandably, these plaintiffs, who had received notices that their applications

---

process, the drafters of the regulation wanted to insure that the examination be conducted close in time to approval of the application, not at a time months or years before that event. Perhaps, the authors of the regulation believed the most significant event in the entire process to be the FBI background check, and they wished to insure that it be given primacy in the process.

It matters not what the reasoning was, however, as the regulations clearly make the receipt of a valid FBI background check a condition precedent to examination, and thereby to approval of a naturalization petition.

were "recommended for approval," were confused and frustrated by the long delay in adjudication of their naturalization application. Clearly, the CIS would be well advised in the future to follow its regulations and delay any examination of an applicant until the FBI has completed its background check, no matter how long that may take.

As to jurisdiction, however, Section 1447(b) of the INA confers jurisdiction on the Court to hear a naturalization petition when the CIS has not adjudicated the petition within 120 days of the applicant's examination, even when the examination was conducted so prematurely as to make an adjudication impossible. As used in the INA, the term "examination" refers to an applicant's CIS interview. Plaintiff had his CIS interview on November 23, 2004. (Compl. [1] at ¶ 6.) More than 120 days have passed since that interview. Accordingly, the Court has jurisdiction over the proceedings. Defendants' motion to dismiss is therefore **DENIED**.

## II. The Court Will Not Remand the Case to CIS Just Yet

A court with jurisdiction over a naturalization petition under § 1447(b) "may either determine the matter or remand the matter, with appropriate instructions, to the [CIS]." (8 U.S.C. § 1447(b).) The defendant has requested, as alternative relief, that the Court remand the case to the CIS to await receipt of the FBI's background check. If the facts are as defendants have alleged, the Court agrees that a remand will ultimately be appropriate in this case. (*See* Defs.' Mot.

to Dismiss [10] at 1.)  In short, the plaintiff's jurisdictional victory would appear to be rather short-lived once the Court proceeds to the merits of the dispute, given that the completion of an FBI background check appears to be a condition precedent to the CIS's approval of a naturalization petition.

Specifically, Congress requires an FBI background check to be completed before a citizen can be naturalized. Pub. L. No. 105-119, 111 Stat. 2440, 2448-49 (1997). Without the background check, Congress will not distribute any funds to CIS to adjudicate the application. (*Id.*) In addition, the background check is obviously essential to ensure that aliens meet the applicable standards for American citizenship before they are naturalized and, thereby, to protect the public.

Moreover, as noted, the regulations, themselves, on which plaintiff relies require that, prior to examination of the naturalization petitioner, the FBI background check must have been completed. The regulations provide that the CSI will schedule an initial examination of the applicant "*only after* the Service has received a definitive response from the Federal Bureau of Investigation that *a full criminal background check of an applicant has been completed*." (8 CFR § 335.2(b)(emphasis added).) As an examination necessarily precedes approval of the naturalization petition, an applicant cannot be approved for citizenship until the

11

FBI has conducted its full criminal background check.

Additionally, the CIS cannot control the speed with which the FBI conducts its investigations. They appear to have done what they can do by asking the FBI to expedite this particular case. This Court cannot properly direct the CIS to violate federal law and sound policy by granting citizenship to an alien who has not had an FBI background check, whatever the reason for the FBI's delay. Nor is the Court, itself, equipped or allowed to perform or review a background check. *Manzoor*, 472 F.Supp. at 808. In addition, although the Court understands the frustration that this particular plaintiff feels at an admittedly protracted process, the Court does not wish, as a general matter, to encourage aliens to expend their resources and those of the Court by filing suits that will likely be sent right back to the CIS to await an FBI background check. *See Manzoor*, 472 F.Supp. at 809 (in remanding the case to the CIS to await completion of the FBI background check, the Court indicated that it had "no desire to make the filing of a lawsuit a means for a naturalization applicant to 'jump to the front of the line.'")  If there is a systemic problem in processing these applications because of resource issues within the FBI, which agency clearly faces many critical demands on its resources, then Congress or the Executive Branch will need to determine whether it is prudent to reset the FBI's priorities on a system-wide basis.

Accordingly, if the facts alleged by defendant are demonstrated to be accurate, it appears that the Court will ultimately be remanding this case to the CIS to await the FBI background check results. Indeed, some courts, at this stage of the litigation, have acceded to the agency's request for an immediate remand to await completion of the background check. *See, e.g., Ali v. Chertoff,* 2007 WL 2344987 (E.D.Va. Aug. 14,2007); *Manzoor,* 472 F.Supp. at 809-810. In those cases that have ordered remand, however, there appears to have been no disagreement by the plaintiff that the FBI background check had not yet been received. *See Ali, supra* at *5. In this case, however, the plaintiff does not appear to make that concession. (*See* Pl.'s Resp. [11] at 12.) For that reason, and given the period of delay in this particular case, the Court will give the plaintiff an opportunity to conduct some <u>limited</u> discovery to confirm the allegations of the CIS that the FBI background check has been requested and that it has not yet been received.

Accordingly, the Court **DENIES, without prejudice,** defendants' motion to remand this case to CIS and **DENIES, without prejudice,** defendants' Motion to Dismiss [10].

The defendant shall file an answer within **thirty (30) days.** Discovery shall begin forty days after this Order and shall continue for **two months.**

13

AO 72A
(Rev.8/82)

## CONCLUSION

For the foregoing reasons, the Court **DENIES** defendants' Motion to Dismiss [10]. The defendants shall file an answer within **thirty (30) days**. Discovery shall begin forty days after this Order and shall continue for **two months**.

SO ORDERED, this __4__ day of September, 2007.

_____
JULIE E. CARNES
UNITED STATES DISTRICT JUDGE

14